Good morning, Your Honors. May it please the Court, Laura Merrigan on behalf of Terry Grimm. There are two issues before the Court today. The first is whether the ALJ had jurisdiction to enforce Grimm's award of medical benefits under Section 21d of the Longshore Act. In the District Court. Correct. Okay, you said the ALJ. I'm sorry, Your Honor. I confess that I usually handle Longshore Act claims, so. And the second is, did the District Court have jurisdiction to decide whether Vortex owes double damages under the Medicare Secondary Payer Act case? The issues share a common. Are the issues related? In other words, if the District Court, if the order was not sufficiently final for the District Court to have enforcement jurisdiction, does that have any implications about whether it gives rise to the double damages claim? It might, Your Honor, depending upon how this Court would define finality under Section 21d. Let's assume, here's my difficulty, so let me put it, lay it out for you, and you can address it. As I read the case law, it says the District Court, as opposed to the court of appeals on an appeal from a board decision, only has jurisdiction to enforce an order that's final as to amounts or where the amounts can just reasonably be determined by other things in the record. And I'm not sure the order in this case qualifies under that standard. If it doesn't, then there's no jurisdiction in the enforcement action. And then I wonder how it is that we can award double damages against someone if the order isn't sufficiently final to specify what ought to be paid. So can you address that? Sure, Your Honor. So in regards to the definition about it needing to detail amounts that would be due, since this is a claim for future medical care, it necessarily cannot detail amounts. So if, in fact, that's how a final order were to be defined under the Longshore Act, then a future award of medical benefits could never be effective and enforced. Well, but you could go back. The agency could, in supplemental orders, say this one is required and what's not. What concerns me is how do we know, how can we tell from the record made in the agency that the specific procedures or treatment that we're now dealing with are, in fact, covered by the order? Normally what we have is an agency order that says provide this, provide that, give treatment for X, Y, or Z. This just says for work-related injuries. How can the district court determine that without supplementing the record, which is something I don't think it's allowed to do? I would say that it is allowed to do that, Your Honor. But even if we were to confine it to the record as it stood, at excerpts of record page 145, the administrative law judge noted that the doctors had recommended a bilateral total knee replacement, as one example. He noted that, but he didn't say it as part of his order, did he? It wasn't in the tiny enumerated portion that said order, but there's nothing in the Longshore Act that confines the effective part of the ALJ's decision to that little part of the last page. I mean, it's a 45-page decision, and all of that certainly gives context to what the ALJ is actually ordering. What's now going on in front of the OWCP? Now, Your Honor, I'm not counsel of this case below, and so I can't speak very much to that. But without regard to the precise proceedings, there are proceedings going on in the agency still, correct? Correct. They were instituted. We can take judicial notice of the fact that proceedings are proceeding. Yes, Your Honor. And I would say that those shouldn't affect anything that happened after the district court's decision to dismiss this case shouldn't affect retroactively whether or not the district court judged that. But they do suggest to me that on the finality issue that there are — there is a way to get a more specific order out of the agency. It might suggest that to you, Your Honor, but I would bring it to the Court's attention, for example, that it was four years between when he filed the claim and when he got the decision in order. Were this Court to hold today that the only enforceable award for future medical benefits would be one where the ALJ somehow as a profit and details exactly where and what medical treatment should be provided would mean that claimants are needing to go back through this four-year process every time that there's any sort of minor dispute. And that can't be what the Longshore Act was for, Your Honors. This is a remedial statute. It's a humanitarian statute. And the ALJ awarded future medical benefits. Can I — This isn't — yes, Your Honor. I guess I have a problem that's more fundamental with your contention on 921D, because it speaks to the enforcement of a compensation order, right? And I guess I'm tripped up by the definition of compensation provided in 90212. So maybe help — can you help with that? Yes, Your Honor. It's actually a very complicated issue that you've hit upon there. There are various places in the Longshore Act that refer to compensation and medical benefits, and it's clear that they're separate. However, there are also times when compensation and medical benefits are considered one and the same. This is not an issue that was briefed, but off the top of my head, I believe the Hunt v. Director case out of the Ninth Circuit speaks to that issue. And there, the Ninth Circuit held that medical benefits were included in compensation and allowed — it was under — it was a Section 28 — a Section 28 attorney's fees case. And the question was whether a health care provider could obtain attorney's fees for pursuing its bills against the insurance carrier. The Ninth Circuit held that it could, even though Section 28 refers to compensation. So there, it's medical benefits and it's compensation. So — Why — okay. Yes. I appreciate your explaining. I have not looked at Hunt, so I'm glad you gave that explanation. But why would we not assume that when Congress spoke of compensation orders in 921D, that it wasn't meaning to encompass or to capture the definition of compensation that it provided in 902? Because the definition in 902.12, I think you can see, it definitely is not talking about awards of future medical benefits. It's talking about a monetary award that's been reduced to a specific dollar amount, right? Yes. And so as far as — the Longshore Act in other places clearly uses a different definition. No, no. And I'm granting you that. Yes. All I'm asking is why wouldn't we take the definition that's in 902.12 and think that that is what — that meaning of compensation is the one that Congress was referring to when it talked about compensation orders in 921D? Because it would be unjust. If a claimant pursues his claim all the way through — That can't be. Congress does unjust things all the time. But as an — That's not a good principle of statutory construction. Help us — help us better than that. As an example, Your Honors, if a claimant were to pursue — say he needed back surgery. Say that he's, you know, suffered a serious back trauma and can't walk anymore, and he needs back surgery. There would then theoretically be absolutely no way to enforce an order awarding that back surgery from the ALJ. The ALJ could say, Employer Carrier, you need to authorize this back surgery. But absent Sections 918 and Sections 921 providing an avenue for enforcement, there would be absolutely — that piece of paper wouldn't be worth anything. Your opponent says — your opponent's response to that is to say that there is a well-established mechanism to go back to the — I guess it's the ALJ, right? Like, let's say that you have a very general order like the one we have here that says, basically, Employer, you're on the hook going forward for all medical care that this person needs arising out of this injury. And a year later, back surgery is called for, and the employer is refusing to pay for it. Your opponent says, Well, no, there's an established process to go back to the agency. You would get some kind of an order from the ALJ saying, No, Employer, you are on the hook for this back surgery. And then I guess that if the employer still refused, that somehow you could reduce that to some kind of a supplemental award that could then be enforced? Is that — that's what I understand your opponent's argument to be. Well, but that right there is the problem, Your Honor, is that somehow could you enforce it. I don't see how you could, because all that the employer would have to do would be to continue to say, Well, okay, so this doesn't specify the location or it doesn't specify whether it's going to be anterior or posterior, et cetera. There's always going to be something that someone could later say is vague. And that's why — But for 99 percent of the time, or 90 percent of the time, the system works relatively well. We ought — the ALJ orders that future medical expenses be covered. The claimant says to the employer, This is one of those ones that's covered, and the employer deals with it. And we never have to deal with enforcement. The question is, do the statutes allow us to deal with the ones at the margin where either the employer has a good-faith belief that it's not covered or just is ornery, or do you have to go back to the agency in those limited circumstances, get a supplemental order that we can enforce? So there are a couple different parts to Your Honor's question. I would say, as to the ones where there is no good-faith reason for the employer to have disputed something, that the district court judge absolutely has permission to enforce. And so — But how does the district judge do that without having a hearing and establishing additional facts? As I read — as I read the case law under 921, it's — we got an order. I'm ordering — you know, it's an order that says you shall provide this surgery. If you haven't provided this surgery, I order you to do it because I'm enforcing the order. But now it's — does he — does he actually get to determine whether it's medically necessary, whether — all those other things? So, Your Honor, I think, yes, under Section 21. But here in this case, that doesn't even have to be done, because it's undisputed that there's an award of medical care for orthopedic conditions. Nothing has been paid for orthopedic conditions, at least as of the district court judgment. As I noted, I'm not — But the order, to be fair, only covers work-related — stuff that is work-related and is medically necessary, medically reasonably necessary, words along those lines. So how do we know that on this record? Well, the employer hasn't given any reasons and didn't object to the total knee replacement, for example, didn't even respond to the request for the back surgery. There has been no good-faith belief even proffered here. So it's not even at issue, was there a good-faith belief that the employer — that these weren't work-related or something like that. They simply weren't paid, none of them. And I would say that a good model to look at that takes it a step further, I admit, is there's a case that's been dragging on for 20 years out of D.C., which also used to be under the Longshore Act, but isn't anymore after, I believe, 1982. It's Davis v. United States Department of Labor. It's been in front of the district court a few times now. So I could give you one of the citations. It's 844-FSEP-2D92, and that's a February 24, 2012 case. There, yes, a magistrate judge has told the carrier, because the carrier has been so within 30 days to any request for treatment with, is it authorized, is it not, and if not, what's the reason? And if the carrier fails to reply at all, then the carrier has to pay a $500 fine. So it forces the carrier to at least reply. And if the carrier gives a reason, but it's just clearly not a good-faith reason, that too, $500 in the district court will order that the carrier needs to do it. Now, it's had to go back before the ALJ sometimes for truly borderline issues over the course of the 20-plus years. You know, if the claimant has something that he's alleging is sequela, then, yes, it'll go back to the ALJ. But for the teeny, tiny things like, I need orthotics, he's not waiting four years for a response anymore. That's right. Why don't we hear from the other side, and you've got a few minutes. You've got two minutes. Fantastic. Thank you. May it please the Court, I'm Dave Doling with Alicia Mittani, I represent all the defendants appellees in this case. The district court correctly dismissed Grimm's Medicare action for failure to state a claim. The U.S. Supreme Court has long held that absent a clear intention otherwise, when an later, more general statute, the earlier statute controls. So you think the Medicare Act private cause of action is preempted? Well, I think it's two things. There's no claim under the Medicare Act. Well, that's a separate issue. I want to get to that in a second. But you just quoted me saying when two statutes conflict, the more specific one covers. So where is the conflict between the Longshore Act and the Medicare Act? So under Section 905A of the Longshore Act, it limits the liability of longshore employers and insurers to the terms of the Longshore Act itself. And the liability to employees. The liability to employees. Right. But this is a liability. The double damages claim is the employee standing in the shoes of the United States government and saying, I'm suing to get back money you should have given to the United States government. The government has assigned its claim to me. That's correct. And we wouldn't dispute that Medicare can intervene in the longshore case and recover the money that it has paid for the two years. Okay. And so let's take the classic case where an order says this specific service shall be paid for by the employer or by the insurance company. The employer and the insurance company refuse to do so. The employee is forced to rely on Federal benefits, Medicare, to get that done. Can he then sue under the double damages provision? Can the claimant? Yes. He cannot. Because? Well, for two reasons. One, failure to state a claim because of the conflict between the Longshore Act and the Medicare Act. And second, because the U.S. District Court would not have subject matter jurisdiction over such a lawsuit. Why? There is subject matter jurisdiction generally over double damages claims under the Medicare Act, is there not? That is correct, Your Honor. What deprives it of jurisdiction in this circumstance? Although U.S. District Courts would generally have subject matter jurisdiction over lawsuits under the Medicare Act, there's a long line of circuit court, Supreme Court cases that says that when special review procedures exist to address certain types of issues or problems, those special review procedures are designed to be exclusive. And it effectively ousts what subject matter jurisdiction U.S. District Courts would otherwise have. What's the special review procedure at issue here? It's the Longshore Act specific. 921D? Well, 921D would be part of. Right, see, because I'm anticipating an order unlike this one, where the ALJ says the man needs reconstructive knee surgery and I'm ordering you to provide it, insurer. And he goes to have the surgery and the insurer or the employer says, ha ha ha, I'm not doing it. So he's forced to go to Medicare to get them to pay for it. And then Medicare pays for it. The employer refuses to reimburse Medicare. And he brings a double damages claim. You're saying there's something in the Act that prevents him from doing that? There's not necessarily anything specific in the Act, but the fact that there are special review procedures that Congress created. But those are only procedures to determine whether or not a specific medical procedure or benefit ought to be afforded to the claimant. He's exhausted all those and he's won on all those in my hypothetical. Is he still unable under those circumstances to seek double damages? He still would be. Because I know that's your position, but why? But it would just be that the case law indicates that when these special review procedures are created to address, for example, under the Longshore Act, the liability of maritime employers for the medical treatment of maritime employees who are injured on the navigable waters of the United States, that when Congress creates review procedures to address those issues, creates statutory provisions addressing the liability and definitions for all those things, that those are intended to be exclusive. But my difficulty is, and unfortunately we've departed from this case a little bit, I'm positing a circumstance where those exclusive procedures have been used and conclusively established your client's liability to do something. And so we're not conflicting with those procedures. We're just saying under those circumstances when he refuses to do so and the Feds have to step in, why shouldn't there be a remedy? I think in that instance where every single Longshore Act issue has been adjudicated before the Department of Labor, you still couldn't bring it in U.S. district court because the liability that's being sought in district court is in addition to that which is provided in the Longshore Act. And Section 905A explicitly says that the liability of an employer to an employee is limited to its terms. Now I understand that it would be Medicare, this is essentially a subrogation action on behalf of Medicare, but the second portion of the damages, the double part, gets made payable to the claimant. So in fact, although it is an instance of subrogation, the 100 percent penalty provision is being made payable to the claimant, which is nowhere allowed in the Longshore Act. So let me let me ask, go back to the original point here, because what your colleague says makes some common sense to me. Somebody gets an award that says, you know, you've been injured on the job and you may need future medical care. And the ALJ says, and therefore I'm ordering the employer to pay future medical care. What happens there? And it's not specific. It doesn't say this procedure or that procedure. How does the employee enforce that award? It depends on what the employee is trying to enforce. Well, I'll give you an example. The employee wants a total knee replacement because he thinks his knee has been wrecked on the job. And he goes to see a doctor and the doctor says, you need one. The award doesn't say total knee replacement, but he sees the doctor and the doctor says you need one. He calls the employer and says, please pay for it. And the employer says, take a hike. What does he do? So in that instance, he would need to go before the U.S. Department of Labor and obtain an award from the U.S. And the knee replacement is related to his work activities, is reasonable and medically necessary. And the employer must, in fact, pay for it. And how long will that take? Well, practically speaking, I think that when an employer like Vortex Signal is under an order to pay for ongoing medical care and treatment, they're not going to constantly dispute these minor treatment issues. Well, but on the hypothetical, they have disputed this. And you've said, OK, he's got to go back to the Department of Labor to get an order. And I'm asking you, how long will it take to get that order? I'm not certain. It depends. Proceedings have to start. Are we talking years? Perhaps a year. And meanwhile, what does he do? He walks around on crutches. I mean, I'm assuming that the result might well be that, in fact, the doctor's right. And you just get to say, drag it out. That doesn't strike me as a very sensible system. Well, in the vast majority of cases, the employer will already agree to pay for it. I know. But I'm asking about a different system, a different situation which has gone wrong. But in that situation, then, the alternative would be that that same issue, whether or not the employer is liable for the new treatment, would have to be litigated in U.S. district court. I'm not sure how long that would take to get litigated in district court. But either way, there has to be some litigation. The district court may, in fact, be quicker, but the district court is going to have to make the underlying decisions about substantive facts under the Longstreet Act about whether or not that new treatment. So let's stay with Judge Fletcher's hypothetical for a second. Let's assume you're right, that you must go back to the agency to get an order. When you go back to the agency, and in the meantime, the employee has had Medicare pay for them, pay for this. And the agency says, boy, this was really in bad faith. You should have paid for this from the outset. No private cause of action under Medicare in that circumstance? Correct. Even though the agency has basically said, you're right. That's correct, because the liability that would be imposed on the employer would be, in addition to that, which the Longstreet Act permits. It sounds as though the employer, who really doesn't like to pay money, is incentivized to stall, to delay, to deny, because the only punishment they get in the end is you've got to pay for it. There's no double damages, no nothing. I think that there are significant, there's significant deterrent, if you will, to taking that approach. Number one, I believe there would be interest charged in the medical treatment for what that's worth. But number two, the Longstreet Act is a fee-shifting statute. So if an employer is going to dispute minor things or knee surgeries, they're going to have to hire their own attorney to defend the case. And then, assuming that, yeah, in all likelihood they are liable for the treatment, they're going to have to pay the claimant's attorney as well. So they're going to have to be paying two different sides for this litigation, which employers don't want to do. That's way too expensive, especially in an instance where it probably turns out they'll be liable for it anyway. Simply from a cost-benefit analysis, it makes no sense for them to pay all that money in attorney's fees, only to end up doing what they knew they had to do in the first place. What's going on in front of the OWCP? So before the OWCP... Don't tell me who you think is right or wrong. Just tell me what proceedings are. So Vortex Signal requested an informal conference before the district director of the 18th Compensation District. District directors throughout the country have the power to hear and try to informally resolve disputes, any disputes under the Longstreet Act, including medical care and treatment. So Vortex Signal requested an informal conference to be held before the district director to address the same exact issues that were raised by Terry Grimm in his complaint. That didn't — because it's a mediation conference or — It's not — Does it result — will that conference — could that conference result in a — what you view as an enforceable order? It would not. It would result in informal recommendation. Right, you'd still — to get an enforceable order under your view, somebody has to go back to the ALJ? That's right. And that order would then be appealable to the board? That's correct. And then appealable to the district court? So court of appeals, I'm sorry. That's correct, Your Honor. On substance. That's correct, Your Honor. Going back to the failure to state a claim issue, as I was indicating, the Longstreet Act conflicts with the Medicare Act. Section 905A of the Longstreet Act limits the liability of the employer to the terms of the act, section 7, medical care and treatment, section 8, compensation benefits, section 9, death benefits. Nothing in section 7 permits a 100 percent penalty to be assessed against an employer for failure to pay for medical care and treatment. This is in direct conflict with the Medicare Act, which at least purports to assess a 100 percent penalty against an employer for its failure to pay for timely medical care and treatment. But what if we view the Medicare Act as the government assessing the penalty and saying, as we are doing QI-TAM actions, and since you saved us the trouble of suing for it, employee, we're just going to give our penalty to you. I think still effectively it's a 100 percent penalty for failure to pay for medical treatment. But not to only act, I think you told me before, all the Longshore Act says is your liability to the employee is limited. It doesn't — if the government merely had a procedure that said Medicare can recover 200 percent, that wouldn't conflict with the act, would it? I should have been more clear, I think. The Section 905A refers to liability on account of such injury or death. And you think that's all liability, including liability to the federal government? So I think that could be expansive to potential lien holders like the federal government. Would it defeat a subrogation claim? It would defeat a subrogation claim, but Medicare would still have a remedy here. They can still intervene in the Longshore case to recover the monies that they paid out. What about — what if the claim in this case were brought by the medical providers themselves as opposed to the claimant? What's your view on that in that scenario? I assume that they could not intervene in the agency proceedings, so they're the ones who say, boy, I performed this knee surgery, the Medicare — the reimbursements are terrible, I'm out all this money, I want to collect this double damage because I should have been paid by the private insurer. Right. That was the Hunt decision. Medical providers can, in fact, intervene in Longshore cases to recover the money. Yes. They can, in fact. They can. And I believe in Hunt, this Court held that they can have interest on those payments as well. The U.S. Supreme Court has also held that when two federal statutes like this conflict, in order for the general statute to control over the more specific statute, so in order for Medicare to control over the Longshore Act, there would have to be some sort of express or clear intention manifested by Congress in the Medicare Act showing that Medicare meant to be controlling over the Longshore Act. But here we simply don't have that. The Longshore Act is a fundamental compromise between employees and employers. Employees get prompt and certain recovery. Employers get lower limits on liability. In order to disrupt this basic compromise that is the Longshore Act, there has to be some sort of clear intention manifested by Congress that that compromise was meant to be disrupted or otherwise altered. We simply don't have that here. Thank you. Okay. Thank you. Would you make that a flat two minutes, please, Mr. O'Meara? Thank you. Thank you, Your Honor. I had more time to consider the first question that had been posed to me regarding whether the MSP claim is necessarily linked to whether there's a final order under Section 21d. And, Your Honor, it can't be because that would extinguish any right to an MSP claim absent very strange circumstances. What's the point? No, it wouldn't. I mean, you have a specific order. They refuse to pay it. Medicare pays it. Medicare, you then get to bring the double damages claim against them. So my problem with your Medicare, notwithstanding his preemption argument, which may or may not be right, my problem with your Medicare claim is we don't know yet whether or not the employer is obligated to pay for the services that Medicare paid for because we don't have an order from the agency that says they're obligated to. So isn't it premature in that sense? No, Your Honor, because there won't be an order from the agency on that issue. Well, then what we've done is put into the Medicare Act claim. We've substituted the district court for the agency in determining what services should have been provided by the employer. And that does seem to me to get back into conflicting with the Act. So going back for a moment, Your Honor, to the Hunt decision, there this Court recognized that a claimant has no incentive to prove that another party needs to be reimbursed for medical bills. So here, too, a claimant would not have any incentive, and I don't even think any standing, to go before an ALJ to prove what Medicare should be paid to get that order to then take that order to district court because of the — No, no. I'm talking about it. I'm sorry. Maybe I misled you. I'm talking about the basic order that says employer must pay for this service. Let's assume you have that order from the agency, this specific service, and then the employer refuses to pay and your client is required to go get Medicare reimbursement. It seems to me it's that initial order that's necessary for the Medicare Act cause of action, preemption aside, because we — otherwise, in the Medicare Act action, the district court would be determining whether or not that specific service should have been paid for by the employer. And that's — that ought to be done by the agency, shouldn't it? Many of the services that we'd be discussing here really probably aren't even in dispute. Had the judge said, say, to Vortex, which items would you stipulate are part of the Longshore Act and which do you have a good-faith belief that they're not, and what is that good-faith belief, probably much of it, such as that I noted, the total knee replacements and the shoulder surgeries, there's no good-faith reason that they shouldn't have been covered. There's no reason that the magistrate judge cannot engage in fact-finding in order to determine whether there's been compliance with an order. That's what Section 21d allows. It allows the magistrate to determine whether there's been compliance. Here, it's not disputed that they're — that they should be paying medical. They weren't paying medical for nine years. This wasn't on hold while the appeals happened. They should have been paying medical that whole time. So as much as, you know, yes, in most cases, an employer is not going to refuse to pay for nine years despite an order, it happened here. And are we really without a remedy other than Mr. Grimm going back to the ALJ every time that he needs to refill his ibuprofen? That can't be the case, Your Honors. Section 21d says that the district judge is supposed to determine whether there was compliance. The district court judge did not determine whether there was compliance here. And it's — this case is almost like a switch. You know, were benefits paid or weren't they? They weren't. Should they have been or should they not have been? They should have been. It's a black-and-white issue, really, because of the extent of nonpayment that happened herein. So under Section 21, the district judge should have been allowed to conduct a factual hearing that was necessary. Your Honors, I see that I am two and a half minutes out of time. So unless there are any other questions, thank you very much. Okay, thank you. Thank both sides for their arguments. Grimm v. Vortex Marine Construction now submitted. We've got one last case this morning, Samayoya v. Davis.
judges: W. Fletcher, Watford, Hurwitz